ROBERT L. BLAND, Judge,
dissenting.
Upon careful reexamination of the record of this case and due consideration given to argument of counsel, I am constrained to adhere to the views which I expressed in a written opinion filed after the original hearing. Indeed, such views are strengthened and confirmed. It is not, in my opinion, a case in which an award may properly be made within the contemplation of the court act. I perceive nothing in the record that could possibly render either the board of control or the West Virginia children’s home at Elkins culpable or in any way responsible for the accident sustained by Bobby Cogar. I do not see any actual negligence upon which an av/ard could be based if an award may be made on that ground. It is well understood that the doctrine of respondeat superior docs not apply to the state. The claim is prosecuted on the sole ground of negligence. The state is not liable for the negligence of its officers, agents or servants. In West Virginia no.such liability has been voluntarily assumed. The youth had no occasion to be in the laundry. His presence there was without the knowledge or consent of anyone connected with the children’s home, and was effected clandenstinely during the momentary absence of the laundress. When she left the laundry the current had been cut off the electric spinner. The lid was on the machine. The laundress had no reason to know or anticipate that the boy would enter the room and deliberately thrust his arm into the spinner.
Claimant’s ward was born March 24, 1910. The accident occurred December 28, 1943. The boy was, at that time, three months less than fourteen years of age, and was in the fifth grade in school. An infant over the age of fourteen years is presumed to have sufficient discretion and understanding to be sensible of danger and to have power to avoid it. Hairston v. United States Coal & Coke Company, 66 W. Va. 324.
The boy explained his presence in the laundry in these words:
‘‘Well, I was fooling around the furnace and I just went in there, and I was fooling around and went in there and stuck *110 my hand in the thing.” He further stated: “Well, I was fooling around it there, and I went over there, and I just looked down in it, and I slipped my arm down in it.” When asked if the laundress had not told him that he was not supposed to come in the laundry, he replied: “Well, sometimes she did.” When asked if he had told the superintendent of the home or his wife, when they would not let him go to a show one night that he was going down there and stick his other arm in the machine, he answered: "Well, I might have done it.” The boy was not required to work in the laundry and did not work there. When he went to the laundry on the occasion that the accident happened the door was closed. He testified that he “just had to bear down on it, and it would come open.”
Anna Lee Helmick, the only person in the laundry when the accident occurred, told the boy not to put his arm about the machine.
Mrs. D. B. Gainer, assistant superintendent and financial secretary of the home, testified that all children were instructed not to go in various places and that the laundry was one place that boys especially are not to enter since they have no occasion to be there except when bringing laundry from the boys’ basement. This witness described the spinner, which claimant contended to be a dangerous instrumentality, as follows: “It is a very smooth machine. It doesn’t have any blades. It has a round whirl built on against the outside wall of the machine and at the top a very smooth copper band and there are no blades in it; it is perfectly smooth in the bottom, with just this nut in the center, and this section that goes around has holes drilled in it, and there are no blades in the machine.”
Mrs. Hazel Collett, laundress at the home, testified that she had put her table linens in the dryer and walked into the adjoining room, and might have been gone as long as five minutes. The current had been turned off. The spinner still revolves for a short time after the current is turned off. It was during her absence from the room that the boy appeared there, walked over to the dryer and put his arm in it. She further testified that when she went to the laundry she was instructed that boys *111 were not to fool around machinery and always warned the boys accordingly.
I see no moral obligation on the part of the state to make an award in this case. An award, under the evidence, must amount to the bestowal of a gratuity. The Legislature is without power to thus appropriate the public funds.
I do not think that the jurisdiction of the court to make a determination of the claim is excluded by section 14 of the court act. The claim does not arise out of the "care” or "treatment” of a person in a state institution within the meaning of the statute.
The injury suffered by the boy makes a strong appeal to my personal sympathy; but as I view my duty, as a member of the court, I am unable to unite with my colleagues in recommending an award in his favor.